UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH McCARTY,

Petitioner,

v.

SCOTT KERNAN,

Respondent.

No.  2:19-cv-00223 TLN KJN

FINDINGS & RECOMMENDATIONS

## I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2014 convictions for domestic violence with a great bodily injury enhancement and vandalism.  Petitioner was sentenced to thirty-nine (39) years in state prison.  Petitioner claims the following: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) insufficient evidence of great bodily injury; (4) a Faretta violation; and (5) cruel and unusual punishment.  After careful review of the record, this court concludes that the petition should be denied.

## II.  Procedural History

On October 7, 2014, a jury found petitioner guilty of corporal injury upon a spouse (Cal. Pen. Code, §§ 273.5(a)), and found true the special allegation of personally inflicting great bodily

1   injury (Cal. Pen. § 12022.7(e)), in case number CM038595. (LD 2 61-62.)[1]  Thereafter, in case

2   number CM040871, petitioner pled guilty to vandalizing a county jail (Cal. Pen. Code,

3   § 4600(a)). (LD 2 82-87.)  On December 4, 2014, as to both matters, petitioner was sentenced to

4   a total of thirty-nine (39) years-to-life in state prison. (LD 2 139-141.)

5          Petitioner appealed the conviction to the California Court of Appeal, Third Appellate

6   District. (LD 2 142-43.)  The Court of Appeal affirmed the conviction and remanded for an

7   amended abstract of judgment reflecting victim restitution owed to the Butte County Sheriff's

8   Department on April 19, 2016.[2]  (LD 6.)

9          Petitioner filed a petition for writ of habeas corpus with the Butte County Superior Court

10  on November 28, 2016. (LD 7.)  The state superior court denied the petition in an order filed

11  December 5, 2016. (LD 8.)

12         On January 5, 2017, petitioner filed a petition for writ of habeas corpus with the Third

13  District Court of Appeal. (LD 9.)  That court denied the petition on January 12, 2017. (LD 10.)

14         On or about January 25, 2017, petitioner filed a petition for review with the California

15  Supreme Court, seeking review of the Third District Court of Appeal's denial. (LD 11.)  The

16  California Supreme Court denied review on March 1, 2017. (LD 12.)

17         A second state habeas petition was filed with the Butte County Superior Court on or about

18  August 1, 2017. (LD 13.)  The second petition was denied August 2, 2017. (LD 14.)

19         Petitioner filed a third state habeas petition with the Butte County Superior Court on or

20  about October 24, 2017. (LD 15.)  The third petition was denied October 25, 2017. (LD 16.)

21         On November 27, 2017, a second petition for writ of habeas corpus was filed with the

22  Third District Court of Appeal. (LD 17.)  That court denied the petition on December 7, 2017.

23  (LD 18.)

24  //

25  [1] "LD" refers to the record documents lodged electronically by respondent on July 16, 2021.
    "ECF" refers to this court's case management/electronic case filing docketing system.
26

27  [2] A petition for review was not filed with the California Supreme Court following affirmance by
    the California Court of Appeal for the Third Appellate District after direct appeal.
28

Finally, on February 26, 2018, petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (LD 19.) The state's highest court denied the petition on May 9, 2018. (See LD 20.)

Petitioner filed the instant petition for writ of habeas corpus with this court on May 14, 2018. (ECF No. 1.) The amended and operative first amended petition was filed April 18, 2019. (ECF No. 11.) Respondent filed his answer to the petition on August 16, 2019. (ECF No. 15.) Petitioner replied thereto on August 30, 2019. (ECF No. 16.)

## III. Procedural Facts[3]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following procedural summary:

> In case No. CM038595, a first amended information filed December 4, 2013, charged defendant Kenneth Gerald McCarty, Jr., with domestic violence (count 1; Pen.Code, § 273.5, subd. (a)).[Fn. omitted.] The information alleged that defendant personally inflicted great bodily injury (§ 12022.7, subd. (e)), making the crime a serious and violent felony, and that he had suffered a prior serious felony (§ 667, subd. (a)), two prior strikes (§ 667, subd. (d)), and two prior prison terms (§ 667.5, subd. (b)).

> In case No. CM040871, an information charged defendant with vandalizing the county jail (§ 4600, subd. (a)).

> On October 7, 2014, a jury convicted defendant of domestic violence in case No. CM038595 and found the great bodily injury enhancement true. In a bifurcated proceeding, the trial court found all the allegations as to defendant's prior record true.

> On October 30, 2014, defendant pleaded no contest to the charge in case No. CM040871.

> The evidence at trial in case No. CM038595 showed that on April 21, 2013, defendant hit his wife, Jeri M., in the jaw, breaking it.

> The probation report in case No. CM040871, to which the parties stipulated as a factual basis for defendant's plea, showed that on February 6, 2014, while defendant was incarcerated in Butte County Jail, he threw three bags of feces at the jail walls, which required a biohazard cleanup.

---

[3] This information is taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. McCarty, No. C078172, May 26, 2016, a copy of which was lodged by respondent as LD 6 on July 16, 2021.

After denying defendant's request to strike his priors, the trial court imposed a consolidated sentence of 39 years to life in state prison, computed as follows: in case No. CM038595, 25 years to life on count 1, plus five years for the great bodily injury enhancement, five years for the prior serious felony, and one year for the prior prison term; in case No. CM040871, three years (the upper term), consecutive to the sentence in the other case. The court awarded defendant 414 days of presentence custody credit, erroneously reflected in the abstract of judgment as 338 actual days and 50 conduct days,2 in case No. CM038595, and 262 days of presentence custody credit (228 actual days and 34 conduct days) in case No. CM040871. The court subsequently modified the award of credits in case No. CM038595 to 416 total days (350 actual days, 52 conduct days, and 14 state time days).

In case No. CM038595, the trial court imposed a $280 restitution fine and a $280 suspended parole revocation restitution fine (§§ 1202.4, subd. (b), 1202.45); the court also ordered victim restitution to Jeri M. in an amount to be determined. The court also imposed a $250 domestic violence program fee (§ 1463.27).

In case No. CM040871, the trial court imposed a $300 restitution fine and a $300 suspended parole revocation restitution fine, and ordered victim restitution to the Butte County Sheriff's Department in the amount of $4,851.21.

In both cases, the trial court imposed a $40 court security fee (§ 1465.8) and a $30 conviction assessment fee (Gov.Code, § 70373).

(People v. McCarty, slip op. at *1-3.)

**IV.  Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

4

determined by the Supreme Court of the United States; or

        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] Lockyer v.

---

[4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. <u>Johnson v. Williams</u>, 568 U.S. 289, 298 (2013) (citing <u>Richter</u>, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Stanley</u>, 633 F.3d at 860; <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes</u>, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. <u>Stancle v. Clay</u>, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

////

1    When it is clear, however, that a state court has not reached the merits of a petitioner's

2    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

3    habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

4    F.3d 1099, 1109 (9th Cir. 2006).

5    **V.  Petitioner's Claims**

6        **A.  *Ineffective Assistance of Trial Counsel***

7        Petitioner claims that trial counsel provided ineffective assistance of counsel for a failure

8    to conduct "any investigation whatsoever," and for failing to "have an expert testify as to the

9    medical facts about bone fractures."  (ECF No. 11 at 5, 8-10, 13.)  Respondent contends the claim

10   is unexhausted and without merit.  (ECF No. 15 at 12-13.)  In reply, petitioner asserts the claim

11   was presented to the state's highest court (ECF No. 16 at 2) and maintains trial counsel "failed to

12   do any investigation whatsoever" (ECF No. 16 at 3).

13       Finding the claim to be adequately exhausted, because the state's highest court issued a

14   silent denial, this court's task is to independently review the state court record to determine

15   whether there was any "reasonable basis for the state court to deny relief," by determining what

16   arguments or theories . . . could have supported the state court's decision; and [] whether it is

17   possible fairminded jurists could disagree that those arguments or theories are inconsistent with

18   the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 98, 101.

19                   Applicable Legal Standards

20       To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his

21   trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

22   a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23   would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

24       Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

25   failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

26   'strong presumption' that counsel's representation was within the 'wide range' of reasonable

27   professional assistance."  Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

28   Petitioner must rebut this presumption by demonstrating that his counsel's performance was

unreasonable under prevailing professional norms and was not the product of "sound trial strategy." Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at the time it occurred, without the benefit of hindsight. Id. at 689.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

The second prong of the Strickland test requires a petitioner to show that counsel's conduct prejudiced him.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693).  "The likelihood of a different result must be substantial, not just conceivable." Id.

Analysis

To the degree petitioner's claim that trial counsel conducted no investigation "whatsoever" is separate from his claim regarding a lack of medical expert testimony, it is speculative and conclusory.  Petitioner fails to explain, in any way, what investigation trial counsel should have conducted. Bragg v. Galaza, 242 F.3d 1082, 1088-89 (9th Cir. 2001) (holding mere speculation that further investigation might lead to evidence helpful to petitioner was insufficient to demonstrate ineffective assistance of counsel); Ceja v. Stewart, 97 F.3d 1246, 1255 (9th Cir. 1996) (to show prejudice, the petitioner must demonstrate that further investigation would have revealed favorable evidence); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("conclusory suggestions that his trial ... counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation").

The undersigned concludes the independent review of this record reveals no indication of ineffective assistance of counsel.  The undersigned notes defense attorney Radcliffe expressly

9

1    indicated on July 17, 2014, that he was prepared for trial.  (LD 4 at 42-43.)  Just one example of

2    trial counsel's preparation, Radcliffe successfully challenged the admission of statements by

3    petitioner, offered by the People as adoptive admissions.  (LD 2 at 3 & LD 4 at 75-85.)

4         Petitioner contends trial counsel was ineffective for a failure to offer expert testimony

5    concerning the victim's injuries, however, there is no showing that any such expert would testify

6    favorably to petitioner.  Sandgathe v. Maass, 314 F.3d 371, 379 (9th Cir. 2002) (affirming denial

7    of ineffective assistance of counsel claim when petitioner presented no evidence in support of

8    claim); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculation regarding what an

9    expert might have testified is insufficient to show ineffective assistance of counsel); James v.

10   Borg, 24 F.3d 20, 26 (9th Cir. 1994) (rejecting ineffective assistance of counsel claim based on

11   unsupported allegations and noting that "[c]onclusory allegations which are not supported by a

12   statement of specific facts do not warrant habeas relief").

13        To demonstrate prejudice resulting from defense counsel's failure to call a witness, a

14   petitioner "must name the witness, demonstrate that the witness was available to testify and

15   would have done so, set out the content of the witness's proposed testimony, and show that the

16   testimony would have been favorable to a particular defense."  Day v. Quarterman, 566 F.3d 527,

17   538 (5th Cir. 2009).  Here, even assuming petitioner identified a radiologist referenced in the

18   record,[5] or some other medical professional, as the intended witness, petitioner has failed to show

19   the expert was available to testify and would have done so, has not set out the content of any such

20   testimony, nor has petitioner shown any such testimony would have been favorable to him.  Dows

21   v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (denying claim of ineffective assistance of counsel

22   for failing to call defense witness where petitioner did not present affidavit from potential witness

23   stating witness was able to offer testimony helpful to the defense).

24        The record reveals certain medical records offered by the People, to wit:  People's Exhibit

25   3A - an interpretation of a CT scan performed on the victim, 3B – a diagram and photograph of

26

27   _____

     [5] The record reveals the prosecution previously intended to offer the testimony of Dr. Garth
     Gregory, a radiologist, but he was unavailable to testify during the then-scheduled May 5, 2014,
28   trial.  (LD 1 at 98-103.)

the victim, and 3C – declaration of the custodian of records.  (LD 4 at 177-78.)  Defense counsel

objected to the evidence on the basis of hearsay; the trial court ruled the documentation

admissible pursuant to the business record exception.  (LD 4 at 4, 178, 201-02.)  The records were

received and admitted by the trial court.  (LD 2 at 17; LD 4 at 202.)  People's Exhibit 3A reveals

that following a CT scan of the victim, a radiologist determined she suffered a fracture to the left

mandible in the subcondylar neck area.  (LD 2 at 10, 17.)  Physician Assistant Julie Ivany also

testified at trial in the People's case.[6]  (LD 4 at 160-68.)  On cross-examination, defense counsel

asked Ivany if she recalled how long her encounter with Jeri McCarty lasted; Ivany did not recall.

(LD 4 at 167.)

The record further reveals that defense counsel challenged the People's evidence, in a case

he characterized as "extremely quick, short," as to the nature of the victim's injury during closing

argument:

> [DEFENSE COUNSEL]: We have a physician's assistant, Ms.
> Ivany, who comes in and says she saw Ms. McCarty in the
> emergency room who was complaining of pain.  She said her
> husband punched her, and then she didn't want to talk about anything
> else.  Couldn't ask her questions.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> And then there's the photograph of Ms. McCarty, and a one-page
> report from the hospital.  A doctor coming in to testify to explain
> what that means.  And you're asked to make a conclusion, an
> important conclusion and decision, based upon that evidence.
>
> And it's important when you deliberate that you consider the state of
> the evidence, and consider it in terms of what the law is.

(LD 4 at 233-34.)  And,

> … The prosecution has the burden in presenting the evidence to
> prove the charge beyond a reasonable doubt and not simply submit a
> paper to you saying you interpret this medical document in
> determining whether a traumatic condition or a great bodily injury
> exists.  A doctor could come in and testify to that.  It's not sufficient
> to ask you to interpret what the document means.

(LD 4 at 236.)  Trial counsel's tactic to question the sufficiency of the prosecution's evidence in

---

[6] Defense counsel unsuccessfully sought to prohibit Ivany's testimony at trial during a California
Evidence Code section 402 hearing outside the presence of the jury.  (LD 4 at 122-33.)

1   light of its burden was not objectively unreasonable. Strickland, 466 U.S. a 687.  Said another

2   way, defense counsel sought to undermine the People's case by cross-examining its expert with

3   an eye toward the brevity of the medical encounter, without obtaining expert assistance himself,

4   and to argue in closing a lack of testimonial and documentary evidence in that regard.  Richter,

5   562 U.S. at 111 ("[i]n many instances cross-examination will be sufficient to expose defects in an

6   expert's presentation.  When defense counsel does not have a solid case, the best strategy can be

7   to say that there is too much doubt about the State's theory for a jury to convict").

8          Moreover, when, as here, the "record furnishes no reason to believe that" an expert

9   analysis "would have created an issue" helpful to the defense, there is no basis for finding the

10   deficient performance prong met.  Langford v. Day, 110 F.3d 1380, 1387-88 (9th Cir. 1996).

11          While theoretically it may have been helpful to petitioner to have additional evidence on

12   the jaw fracture suffered by the victim, it is too speculative to believe that there is a "reasonable

13   probability sufficient to undermine confidence in the outcome" that the jury would have come to

14   a different conclusion if this theoretical expert evidence had been presented at trial.  Harrington v.

15   Richter, 562 U.S. at 104 ("It is not enough 'to show that the errors had some conceivable effect

16   on the outcome of the proceeding'" (quoting Strickland, 466 U.S. at 693)).  Given the high bar

17   required under Strickland, and in light of the deference the undersigned must afford the state

18   court's decision, petitioner fails to prove that he was prejudiced by trial counsel's inaction.

19          Petitioner has not met his burden of "showing there was no reasonable basis for the state

20   court to deny relief.  Richter, 562 U.S. at 98.  The state court's decision was not contrary to, or an

21   unreasonable application of, clearly established Supreme Court authority.  Accordingly, it is

22   hereby recommended petitioner's claim be denied.

23          **B.  *Ineffective Assistance of Appellate Counsel***

24          Petitioner claims that appellate counsel provided ineffective assistance of counsel by filing

25   a Wende[7] brief with the state appellate court and for ignoring or refusing his requests that she

26   appeal on "valid" "specific grounds."  (ECF No. 11 at 5-6, 10-12.)  Respondent asserts this claim

27

28   [7] People v. Wende, 25 Cal.3d 436 (1979).

12

1    is procedurally barred, partially unexhausted, and ultimately lacking merit.  (ECF No. 15 at 13-

2    14.)  In reply, petitioner maintains appellate counsel provided ineffective assistance of counsel by

3    failing to argue on appeal that trial counsel was ineffective and for failing to assert "a claim of

4    illegal experimentation."  (ECF No. 16 at 2-4.)

5            As a general rule, "[a] federal habeas court will not review a claim rejected by a state

6    court 'if the decision of [the state] court rests on a state law ground that is independent of the

7    federal question and adequate to support the judgment.'"  Walker v. Martin, 562 U.S. 307, 315

8    (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)).  However, a reviewing court need not

9    invariably resolve the question of procedural default prior to ruling on the merits of a claim.

10   Lambrix v. Singletary, 520 U.S. 518, 524-525 (1997); see also Franklin v. Johnson, 290 F.3d

11   1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the

12   merits issues presented by the appeal, so it may well make sense in some instances to proceed to

13   the merits if the result will be the same").  Where deciding the merits of a claim proves to be less

14   complicated and less time-consuming than adjudicating the issue of procedural default, a court

15   may exercise discretion in its management of the case to reject the claim on the merits and forgo

16   an analysis of procedural default.  See Franklin, 290 F.3d at 1232 (citing Lambrix, 520 U.S. at

17   525).  The undersigned elects to forgo such analysis here.  Additionally, the undersigned finds the

18   claim to be sufficiently exhausted for purposes of this court's consideration.  See 28 U.S.C.

19   § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

20   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

21   State"); Granberry v. Greer, 481 U.S. 129, 131 (1987) ("failure to exhaust state remedies does not

22   deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application").

23           Because the state's highest court issued a silent denial, this court's task is to independently

24   review the state court record to determine whether there was any "reasonable basis for the state

25   court to deny relief," by determining what arguments or theories . . . could have supported the

26   state court's decision; and [] whether it is possible fairminded jurists could disagree that those

27   arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

28   Court."  Richter, 562 U.S. at 98, 101.

13

1          Applicable Legal Standards

2          A habeas claim alleging appellate counsel was ineffective is evaluated under Strickland.

3   See Williams v. Taylor, 529 U.S. at 390-91.  Again, to establish ineffective assistance of counsel,

4   petitioner must prove:  (1) counsel's representation fell below an objective standard of

5   reasonableness under prevailing professional norms, and (2) there is a reasonable probability that,

6   but for counsel's errors, the result of the proceeding would have been different.  Strickland, 466

7   U.S. at 687-94, 697.  As the high court has observed, appellate counsel performs properly and

8   competently when he or she exercises discretion and presents only the strongest claims instead of

9   every conceivable claim.  Jones v. Barnes, 463 U.S. 745, 752 (1983); Smith v. Murray, 477 U.S.

10   527, 536 (1986).  "Effective appellate counsel should not raise every nonfrivolous argument on

11   appeal, but rather only those arguments most likely to succeed."  Davila v. Davis, 137 S.Ct. 2058,

12   2067 (2017).

13          In People v. Wende, the California Supreme Court established a constitutionally sufficient

14   procedure by which appellate counsel may inform the court of the nature of an appeal and decline

15   to brief issues judged to be frivolous.  Smith v. Robbins, 528 U.S. 259, 265 (2000).  Appellate

16   counsel's decision to file a Wende brief is reviewed under Strickland.  Smith, 528 U.S. at 285.

17   "In many instances, appellate counsel will fail to raise an issue because she foresees little or no

18   likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized

19   as one of the hallmarks of effective appellate advocacy."  Miller v. Keeney, 882 F.2d 1428, 1434

20   (9th Cir. 1989).  The relevant inquiry is not what counsel could have done; rather, it is whether

21   the choices made by counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

22   1998).  Even if petitioner could demonstrate his appellate attorney acted unreasonably, he must

23   still show prejudice.  Smith v. Robbins, 528 U.S. at 285-286.  Habeas relief for ineffective

24   assistance of counsel may only be granted if the state-court decision unreasonably applied the

25   Strickland standard.  Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

26          Analysis

27          Petitioner argues that his appellate counsel provided ineffective assistance by filing a

28   Wende brief on direct appeal.

14

1    Appellate counsel filed a <u>Wende</u> brief with the California Court of Appeal, Third

2    Appellate District, on or about January 12, 2016.  (LD 5.)  In the brief, appellate counsel declares,

3    under penalty of perjury, that she advised petitioner of his right to file a supplemental brief in

4    written correspondence.  (LD 5 at 8.)  Petitioner did not file a supplemental brief with the state's

5    intermediate appellate court.  (LD 6 at 3 ["Defendant was advised by counsel of the right to file a

6    supplemental brief within 30 days of the date of filing the opening brief.  More than 30 days

7    elapsed, and we received no communication from defendant"].)  Further, the state intermediate

8    court conducted an independent review on appeal and affirmed petitioner's convictions.  (LD 6 at

9    3 ["Having undertaken an examination of the entire record, we find no arguable error that would

10   result in a disposition more favorable to defendant"].)

11    As the undersigned has previously found, the California Supreme Court could have

12   reasonably determined that petitioner's ineffective assistance of trial counsel claim did not

13   constitute a viable appellate issue.  Simply put, there were no meritorious issues that appellate

14   counsel failed to raise.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. at 751-52 (appellate counsel does not have

15   an obligation to raise every nonfrivolous argument); <u>Miller v. Keeney</u>, 882 F.2d at 1434-35

16   (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel); <u>see also</u>

17   <u>Moorman v. Ryan</u>, 628 F.3d 1102, 1107 (9th Cir. 2010) ("If trial counsel's performance was not

18   objectively unreasonable or did not prejudice [petitioner], then appellate counsel did not act

19   unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and

20   [petitioner] was not prejudiced by appellate counsel's omission"); <u>Wildman v. Johnson</u>, 261 F.3d

21   832, 840 (9th Cir. 2001) ("[petitioner] cannot sustain his claim for ineffective assistance of

22   appellate counsel because the issues he raises are without merit"); <u>Featherstone v. Estelle</u>, 948

23   F.2d 1497, 1507 (9th Cir. 1991) (where trial counsel's performance did not fall below <u>Strickland</u>

24   standard, claim that appellate counsel was ineffective for failing to raise ineffective assistance of

25   trial counsel on appeal must fail).

26    Hence, the California Supreme Court could have reasonably determined that there was no

27   ineffective assistance of appellate counsel because appellate counsel had the discretion to avoid

28   making frivolous arguments, including petitioner's contention of "illegal experimentation."

1   <u>Davila v. Davis</u>, 137 S. Ct. at 2067; <u>Jones v. Barnes</u>, 463 U.S. at 752.  And petitioner did not

2   show that but for the filing of a <u>Wende</u> brief by appellate counsel there was a reasonable

3   probability the result of the proceeding would have been different.  There was no prejudice.  At a

4   minimum, fairminded jurists could disagree.  <u>Richter</u>, 562 U.S. at 101.

5          For the foregoing reasons, it was not objectively unreasonable for the California Supreme

6   Court to determine that petitioner's appellate counsel did not perform deficiently by filing a

7   <u>Wende</u> brief despite petitioner's requests otherwise.  <u>See</u> <u>Delgado v. Lewis</u>, 223 F.3d 976, 981

8   (9th Cir. 2000).  Thus, it is recommended that petitioner's ineffective assistance of appellate

9   counsel claim be denied.

10         **C.  *Insufficient Evidence of Great Bodily Injury***

11         In his third claim for relief, petitioner contends there was insufficient evidence to support

12  the jury's true finding of great bodily injury.  (ECF No. 11 at 6, 14-15.)  Respondent maintains

13  this claim also is procedurally barred, and fails on the merits.  (ECF No. 15 at 15-16.)  In his

14  reply, petitioner asserts a lack of x-rays and expert testimony support his claim.  (ECF No. 16 at

15  4-5.)

16         The undersigned elects to forego an analysis of any applicable procedural bar.  <u>See</u>

17  <u>Franklin</u>, 290 F.3d at 1232 (citing <u>Lambrix</u>, 520 U.S. at 525).  The undersigned reviews the

18  record to determine whether there was any "reasonable basis for the state court to deny relief," by

19  determining what arguments or theories . . . could have supported the state court's decision; and []

20  whether it is possible fairminded jurists could disagree that those arguments or theories are

21  inconsistent with the holding in a prior decision of [the Supreme] Court."  <u>Richter</u>, 562 U.S. at 98,

22  101.

23                  Applicable Legal Standards

24         The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from

25  conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the

26  crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  Thus, one who

27  alleges that the evidence introduced at trial was insufficient to support the jury's findings states a

28  cognizable federal habeas claim.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401-02 (1993).  Nevertheless,

the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  On direct review, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Federal habeas relief is available only if the state court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson.  Juan H., 408 F.3d at 1275 n.13.

Habeas claims based upon alleged insufficient evidence therefore "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  As noted by the Supreme Court:

> First, on direct appeal, "it is the responsibility of the jury−not the court−to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16.  In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference."  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution, and must defer to that resolution.  Jackson, 443 U.S. at 326.

Analysis

California Penal Code section 12022.7 provides, in relevant part:

> (e) Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years. As used in this subdivision, "domestic violence" has the meaning provided in subdivision (b) of Section 13700.

17

1    (f) As used in this section, "great bodily injury" means a significant
2    or substantial physical injury.

3        It is not necessary that victim suffer "permanent," "prolonged," or "protracted"

4    disfigurement, impairment, or loss of bodily function for jury to conclude that victim suffered

5    "great bodily injury" within meaning of sentence enhancement statute.   People v. Escobar, 3

6    Cal.4th 740, 750 (1992).  Proof that a victim's bodily injury is significant or substantial within the

7    meaning of sentence enhancement statute may be established by evidence of the severity of the

8    victim's physical injury, the resulting pain, or the medical care required to treat or repair the

9    injury.   People v. Cross, 45 Cal.4th 58, 66 (2008).  In California, a jaw fracture can qualify as a

10   "significant or substantial injury" within the meaning of the statute.  People v. Johnson, 104

11   Cal.App.3d 598, 609 (1980).

12       Here, the evidence adduced at trial concerning great bodily injury included medical

13   documentation and testimony that Jeri McCarty suffered a subcondylar jaw fracture following a

14   punch inflicted by petitioner.  (See, e.g. LD 2 at 17 & LD 4 at 163-64, 166.)  Physician Assistant

15   Ivany testified the victim appeared to be in pain and complained of jaw pain.  (LD 4 at 162-63.)

16   Physician Assistant Ivany observed the victim had difficulty speaking and "was having extreme

17   difficulty opening her mouth."  (LD 4 at 164, 166.)  Further, there was testimony from the

18   victim's son Dillon Prusia.  Prusia testified his mother called him on the date of the incident and

19   told him "she's pretty sure [petitioner] broke her jaw."  (LD 4 at 148, 153-54.)  She sounded

20   "[p]retty distressed, and like she was trying to talk as minimal as possible."  (LD 4 at 149.)  Given

21   his mother's tone of voice, Prusia testified "she was scared and upset."  (LD 4 at 149.)  Prusia

22   picked his mother up at the home she shared with petitioner and took her to the emergency room.

23   (LD 4 at 148, 150.)  More specifically, when Prusia arrived to pick up his mother, she was

24   "holding her jaw" and "crying," and continued to hold her jaw throughout; they did not speak

25   while in route to the hospital.  (LD 4 at 150-51, 154-55, 157.)  Once at their destination, the

26   victim advised Prusia that petitioner hit her, that "she blacked out and woke up next to the …

27   water heater."  (LD 4 at 151.)   On the ride home from the hospital, Prusia testified his mother

28   was "[v]ery angry, very upset, still crying."  (LD 4 at 152.)

It was the jury's job to decide what conclusions it could draw from the evidence presented during trial.  Cavazos v. Smith, 565 U.S. 1, 2 (2011).  This jury concluded from the evidence presented at trial that petitioner struck or punched the victim, fracturing her jaw, thus causing great bodily injury.  More specifically, the evidence offered included witness testimony and documentation relevant to the severity of Jeri McCarty's injury and the pain it caused her.  It was not unreasonable for the jury to conclude that injury was a significant or substantial one.  Such a finding does not amount to one wherein no rational trier of fact could have so held; therefore it was not objectively unreasonable.

Notably, petitioner's reliance on People v. Nava, 207 Cal.App.3d 1490 (1989), is misplaced.  Nava merely held it was error to instruct the jury that a bone fracture constitutes a significant and substantial physical injury within the meaning of the statute.  Nava, 207 Cal.App.3d at 1494.  The state's intermediate court concluded that a broken bone may constitute great bodily injury, but every bone fracture does not constitute great bodily injury as a matter of law.  Id. at 1498.  The instruction in Nava was error because it usurped the fact-finding role of the jury.  Id. at 1497-98.  No similar instruction was given in petitioner's case.  (LD 2 at 49; see also LD 2 at 24-59.)  In other words, in Nava, the jury was instructed that a bone fracture constituted great bodily injury, meaning the jury did not decide that issue.  Whereas in petitioner's case, the jury was not so instructed and thus did perform their duty of determining whether or not the subcondryal fracture suffered by Jeri McCarty amounted to a significant and substantial serious injury within the meaning of the statute.

In conclusion, viewing all of the evidence in the light most favorable to the prosecution, the undersigned concludes that a rational trier of fact could have found beyond a reasonable doubt that the victim suffered a fractured jaw sufficient to establish that great bodily injury was inflicted.  Jackson, 443 U.S. at 319.  The state court's determination in this regard was not "so lacking in justification there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter, 562 U.S. at 103.  Accordingly, the undersigned recommends this claim be denied.

////

D.  *Faretta Issue*

In his fourth claim for relief, petitioner argues his rights pursuant to <u>Faretta v. California</u>, 422 U.S. 806 (1975), were violated.  (ECF No. 11 at 6, 15-16.)  Respondent again asserts the claim is procedurally barred, and fails on the merits.  (ECF No. 15 at 17-19.)  Petitioner replies he was not required to reassert his <u>Faretta</u> rights "on pain" of forfeiting the right.  (ECF No. 16 at 5.)

The undersigned again elects to forego an analysis of any applicable procedural bar.  <u>See</u> <u>Franklin</u>, 290 F.3d at 1232 (citing <u>Lambrix</u>, 520 U.S. at 525).  As before, the undersigned reviews the record to determine whether there was any "reasonable basis for the state court to deny relief," by determining what arguments or theories . . . could have supported the state court's decision; and [] whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  <u>Richter</u>, 562 U.S. at 98, 101.

Applicable Legal Standards

The Sixth Amendment guarantees a criminal defendant the right to represent himself. <u>Faretta</u>, 422 U.S. at 832; <u>see also</u> <u>Cooks v. Newland</u>, 395 F.3d 1077, 1080 (9th Cir. 2005) (<u>Faretta</u> rule clearly established by United States Supreme Court for purposes of 28 U.S.C. section 2254(d).  A defendant must, however, assert that right "unequivocally" as well as "knowingly and intelligently."  <u>Faretta</u>, at 806, 835.  He must also be competent to stand trial before he may waive his right to counsel.  <u>Godinez v. Moran</u>, 509 U.S. 389, 396, 400-02 (1993); <u>see also</u> <u>Indiana v. Edwards</u>, 554 U.S. 164, 178 (2008) ("the Constitution permits states to insist upon representation by counsel for those competent enough to stand trial ... but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves").

Moreover, a trial court may refuse to allow a defendant to represent himself or herself if the defendant is not "able and willing to abide by the rules of procedure and courtroom protocol." <u>See</u> <u>United States v. Bishop</u>, 291 F.3d 1100, 1114 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1176 (2003) (citation & internal quotations omitted).  "The right of self-representation is not a license to abuse the dignity of the courtroom."  <u>Faretta</u>, 422 U.S. at 834 n. 46; <u>see also</u> <u>McKaskle v.</u>

20

1  Wiggins, 465 U.S. 168, 173 (1984) (Faretta held that accused has the right to conduct his or her

2  own defense "provided only that he knowingly and intelligently forgoes his right to counsel and

3  that he is able and willing to abide by rules of procedure and courtroom protocol").

4  <u>Relevant Background</u>

5  On February 11, 2014, defense counsel Foster declared a doubt as to petitioner's

6  competency following a report "received from the Butte County Jail." (LD 4 at 26.)  Proceedings

7  were suspended and a physician appointed to examine petitioner and provide a report to the court.

8  (LD 4 at 26.)  During those proceedings, petitioner asked the court, "can I get another attorney

9  because - - you know, I've gone through - - you know, I've tried to go fast and - - speedy trial and

10  get this whole thing done" and "[w]e're ten months down the road, Your Honor, and all they want

11  to do is yank me around with 1380 shit." (LD 4 at 26-27.)  A Marsden[8] hearing was set for later

12  that afternoon.  (LD 4 at 27.)  At that time, when asked about relieving Foster and appointing

13  another attorney, petitioner stated:

14  
15  
16  
> I would like to go pro per on this, Your Honor, 'cause even I could beat this case.  I don't know what - - I don't know what is going on with this court at this time.  I've never had this much problems in 30 years of doing time.  Okay.  This is ridiculous.

17  
18  
19  
20  
21  
22  
23  
> Mr. Foster - - the other day I go to court, and he's telling the Judge that he needs extra time because the D.A.'s witness is not here. Well, that's the D.A.'s job.  You're my attorney. Why are you doing the D.A.'s work for him?  You should be sticking up for me. Who cares what the D.A.'s doing.  You work for me.  You know, - - I mean, this is just ridiculous, Your Honor.  I mean, I don't want to sit here and argue and throw blood and go, Hey, man, you're this.  You're that. This is ridiculous. And this is the second time somebody's filed a doubt on me. I mean, the first time I had another attorney, I got rid of her, got him back, and now he's doing the same thing.  All I wanted was a fast and speedy trial, Your Honor.  I don't understand all this stupid ignorant - - you know, crap.  I've never had this much problems.  It's usually you go to trial and, bam, you're done.  You know, this is ridiculous.

24  (LD 4 at 28-29.)  In reply, the trial court stated, in part:

25  
26  
27  
> Obviously, Mr. McCarty, if appropriate, you do have the right to represent yourself. Based on my observations, of you during the times you've appeared before me, and the most recent declaration of counsel, I am inclined to defer ruling on your request to represent

28  [8] People v. Marsden, 2 Cal.3d 118 (1970).

1
2

yourself until I at least get a report back from Dr. Switzer.  So that's
what I'm inclined to do.

3  (LD 4 at 29.)  Defense counsel then advised petitioner in open court that "[b]y statute, if there's

4  an indication that a doctor needs to be appointed, the law requires that you have an attorney until

5  that process is over.  Once that process is over, then you can make a request to represent yourself.

6  Do you understand that;" petitioner replied affirmatively.  (LD 4 at 29.)  Further proceedings

7  were scheduled for March 12 in anticipation of the doctor's report.  (LD 4 at 30.)

8         On March 12, 2014, the court and all parties were in receipt of Dr. Switzer's report

9  finding petitioner competent.  (LD 4 at 32.)  The trial court adopted the doctor's competency

10  finding and reinstated proceedings.  (LD 4 at 32-33.)  Thereafter, the court assigned the matter to

11  be tried in another department and for petitioner to be assisted by defense attorney Radcliffe.[9]

12  (LD 4 at 33.)  At no time during those proceedings did petitioner renew his Faretta motion.

13         On July 25, 2014, before Judge Michael Candela at a motions in limine hearing, defense

14  attorney Radcliffe asked that petitioner be evaluated pursuant to California Penal Code section

15  1368.  Petitioner immediately spoke up:

16
17

THE DEFENDANT: And I'm going to request a new attorney Your
Honor because he is trying to force me to take a 13 year deal and
that's why we've been having this conversation.  And it's not up to
him to force me to take time.

18
19

THE COURT:  All right so sounds like he's making a Marsden
request, Mr. Radcliffe, and I believe he has a right to a have a
Marsden hearing.

20
21

MR. RADCLIFFE:  I believe that's correct.

22
23

THE COURT:  Prior to 1368 for me to suspending the proceeding
under 1368, so we'll have that closed Marsden hearing now.  I'll ask
the public and prosecution to please leave the courtroom and we'll
do that in camera hearing.

24  (LD 4 at 46-47.)   Following the Marsden hearing, the court asked petitioner whether he had

25  another request; the following colloquy occurred:

26
27

THE DEFENDANT: Oh if I could go pro per so that I can proceed
to some sort of trial at least and we can finish this case up and quit
wasting the State's time.

28  [9] The February 11 and March 12 proceedings were heard before Judge James Reilley.

1    MR. RADCLIFFE: Your Honor we still have the issue that I raised
with respect to the 1368.

2

3    THE COURT: Mr. McCarty, your request for going pro per was only
if I did not grant the Marsden request, correct?

4    THE DEFENDANT: Correct Your Honor.

5    THE COURT: All right.

6    THE DEFENDANT: Just to proceed somewhere.  You know.

7    THE COURT:  All right. Well, again, based upon the equivocal
nature of your request to go pro per you only want to go pro per if I
8    don't relieve Mr. Radcliffe and appoint a new attorney and I have
denied that Marsden request.  Then again, it's an equivocal request
9    to go pro per, it's not free and voluntary and intelligently made so
the - - and I have looked at the Wyndham factors as well as I'm - -
10   that's People versus Wyndham, 1977 case found at 19 Cal 3d at page
121.  Looking at the quality of counsel's representation which I just
11   went over in the Marsden hearing I find it is adequate, to say the least,
it meets the standards for sure.  This is the defendant's first request
12   to substitute in.  We are at a stage where we're ready to go to trial on
Monday.

13

14   MR. RADCLIFFE:  Your Honor if I may, apologize for interrupting,
I'm just wondering sequentially with the issue of 1368 raised, is that
15   something we should be addressing before the Faretta issue in any
event.

16   THE COURT: That's your take that I should decide that first?

17   MR. RADCLIFFE:  I think that has to be addressed.  Obviously that
would have an impact on how whatever the Court does.  On the
18   possibility of Mr. McCarty's request to represent himself and my
understanding is that under provisions of 1368 once the question is
19   raised, then the Court follows that and agrees there is a question then
criminal proceedings are suspended so it wouldn't be handling a
20   Faretta.

21   THE COURT:  All right. I see that now.  It seems to me in the ruling
I made on the Faretta during the Marsden hearing I said I was going
22   to re-evaluate here in open court so that ruling is void.  So there's
been no ruling on the Faretta issue and I will take up the 1368 at this
23   time before ruling on any Faretta request.

24   I am going to suspend proceedings under Penal Code section 1368
and that's in all three cases, Madam Clerk and appoint a doctor to
25   evaluate Mr. McCarty under the provisions of 1368 et sec. …

26   (LD 4 at 49-51.)  Moments later, the court noted:  "The 1368 request was made prior to any

27   Faretta request by defendant so it seems appropriate and correct that I take up the motions, the

28   and issues in that fashion.  So he has no right to go pro per or request pro per status at this point."

1   (LD 4 at 52.)  When the court vacated the trial set for the following Monday and set the matter for

2   a hearing on the competency report for August 28, 2014, petitioner interrupted to state: "I'm just

3   going to plead when I come back.  All you're doing is stalling.  I'm not taking no deal" and

4   "[p]leading guilt when I come back Your Honor."  (LD 4 at 52-53.)

5        On August 28, 2014, following receipt of the doctor's report, the trial court found

6   petitioner competent to stand trial.  (LD 4 at 55-56.)  Trial readiness and trial dates were selected;

7   petitioner made no mention of wishing to represent himself.  (LD 4 at 56-57.)  Nor did petitioner

8   do so at the trial readiness conference of October 3, 2014.[10]  (LD 4 at 59-63; see also LD 4 at 64-

9   65.)  The matter was to be tried October 6, 2014.  (LD 4 at 61.)

10                Analysis

11       In Faretta, the Supreme Court explained that "weeks before trial, Faretta clearly and

12  unequivocally declared to the trial judge that he wanted to represent himself and did not want

13  counsel."  Faretta, 422 U.S. at 835.  Where a trial court has "conclusively denied" a criminal

14  defendant's request to represent himself in a "clear and unequivocal fashion," the defendant is not

15  required to reassert that request on pain of forfeiting his or her Faretta right.  See United States v.

16  Arlt, 41 F.3d 516, 523 (9th Cir. 1994) (approving principles adopted in Brown v. Wainwright,

17  665 F.2d 607 (5th Cir. 1982) (en banc)).  Conversely, "[w]here there has been no clear denial of

18  the request to proceed pro se and the question of self-representation is left open for possible

19  further discussion, the defendant's failure to reassert his desire to proceed pro se and his apparent

20  cooperation with his appointed counsel, who conducts the remaining pretrial and trial

21  proceedings, constitutes a waiver of his previously asserted Sixth Amendment right to proceed

22  pro se." United States v. Barnes, 693 F.3d 261, 272 (2d Cir. 2012), cert. denied, 568 U.S. 1113

23  (2013) (citations, quotations & brackets omitted); Brown v. Wainwright, 665 F.2d at 612 ("After

24  a clear denial of the [Faretta] request, a defendant need not make fruitless motions or forego

25  cooperation with defense counsel in order to preserve the issue on appeal.  Neither of these

26  circumstances, however, is present here"); cf. McKaskle v. Wiggins, 465 U.S. at 182 ("A

27  _____

28  [10] On this occasion, petitioner rejected a plea offer of thirteen years in prison in exchange for his
     plea of guilty to the count of corporal injury to a spouse with the great bodily injury enhancement.

                                      24

1  defendant's invitation to counsel to participate in the trial obliterates any claim that the

2  participation in question deprived the defendant of control over his own defense").

3        Here, the trial court denied petitioner's <u>Faretta</u> requests as outlined above but did not

4  foreclose petitioner from reasserting his request to represent himself following the conclusion of

5  the competency proceedings.  Thereafter, petitioner never renewed his request to represent

6  himself, but rather proceeded without objection to trial and sentencing with the assistance of

7  counsel.  Under these circumstances, the undersigned cannot deem objectively unreasonable the

8  state court's likely theory that petitioner had abandoned his <u>Faretta</u> request.  <u>See</u> <u>United States v.</u>

9  <u>Barnes</u>, 693 F.3d at 271-72 (no <u>Faretta</u> violation, where trial court did not rule on <u>Faretta</u> request,

10  but rather stated that a hearing on the issue would be necessary after defendant's psychiatric

11  examination, and defendant never renewed his <u>Faretta</u> request after psychiatrist deemed defendant

12  competent to represent himself, but instead went to trial represented by counsel).

13        In sum, fairminded jurists could disagree about whether petitioner's requests and

14  subsequent failure to renew that request amounted to a violation of his constitutional right to

15  represent himself.  <u>See</u> <u>Richter</u>, 562 U.S. at 103 ("As a condition for obtaining habeas corpus

16  from a federal court, a state prisoner must show that the state court's ruling on the claim being

17  presented in federal court was so lacking in justification that there was an error well understood

18  and comprehended in existing law beyond any possibility for fairminded disagreement.").

19  Accordingly, the undersigned recommends this claim be denied.

20        **E.  *Cruel and Unusual Punishment***

21        In his final claim for relief, petitioner contends a violation of the Eighth Amendment's

22  prohibition against cruel and unusual punishment.  (ECF No. 11 at 6, 16-18.)  Respondent

23  counters petitioner's claim is procedurally barred and lacking in merit.  (ECF No. 15 at 19-20.)

24  In reply, petitioner cites his efforts to obtain his medical records to support his claim and asks this

25  court to afford him "the benefit of doubt" and to grant relief.  (ECF No. 16 at 5-6.)

26        The undersigned again elects to forego an analysis of any applicable procedural bar.  <u>See</u>

27  <u>Franklin</u>, 290 F.3d at 1232 (citing <u>Lambrix</u>, 520 U.S. at 525).  Given the state court's silent

28  denial, the undersigned reviews the record to determine whether there was any "reasonable basis

1   for the state court to deny relief," by determining what arguments or theories . . . could have

2   supported the state court's decision; and [] whether it is possible fairminded jurists could disagree

3   that those arguments or theories are inconsistent with the holding in a prior decision of [the

4   Supreme] Court." <u>Richter</u>, 562 U.S. at 98, 101.

5                            <u>Applicable Legal Standards</u>

6          The Eighth Amendment to the United States Constitution provides "[e]xcessive bail shall

7   not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The

8   cruel and unusual punishments clause was designed to protect those convicted of crime and

9   circumscribes criminal process in three ways:  it limits kinds of punishment that can be imposed

10  on those convicted of crimes, it proscribes punishment grossly disproportionate to severity of

11  crime, and it imposes substantive limits on what can be made criminal and punished as such.

12  <u>Ingraham v. Wright</u>, 430 U.S. 651, 667 (1977).

13         In <u>Graham v. Florida</u>, the United States Supreme Court held as follows:

14                 The Eighth Amendment states: "Excessive bail shall not be required,
                   nor excessive fines imposed, nor cruel and unusual punishments
15                 inflicted." To determine whether a punishment is cruel and unusual,
                   courts must look beyond historical conceptions to "'the evolving
16                 standards of decency that mark the progress of a maturing society.'"
                   *Estelle v. Gamble*, 429 U.S. 97, 102 [] (1976) (quoting *Trop v.
17                 Dulles*, 356 U.S. 86, 101 [] (1958) (plurality opinion)). "This is
                   because '[t]he standard of extreme cruelty is not merely descriptive,
18                 but necessarily embodies a moral judgment. The standard itself
                   remains the same, but its applicability must change as the basic
19                 mores of society change.'" *Kennedy v. Louisiana*, 554 U.S. 407, 419
                   [] (2008) (quoting *Furman v. Georgia*, 408 U.S. 238, 382 [] (1972)
20                 (Burger, C.J., dissenting)).

21                 The Cruel and Unusual Punishments Clause prohibits the imposition
                   of inherently barbaric punishments under all circumstances. See, *e.g.*,
22                 *Hope v. Pelzer*, 536 U.S. 730 [] (2002). "[P]unishments of torture,"
                   for example, "are forbidden." *Wilkerson v. Utah*, 99 U.S. 130, 136
23                 (1879). These cases underscore the essential principle that, under the
                   Eighth Amendment, the State must respect the human attributes even
24                 of those who have committed serious crimes.

25                 For the most part, however, the Court's precedents consider
                   punishments challenged not as inherently barbaric but as
26                 disproportionate to the crime. The concept of proportionality is
                   central to the Eighth Amendment. Embodied in the Constitution's
27                 ban on cruel and unusual punishments is the "precept of justice that
                   punishment for crime should be graduated and proportioned to [the]
28                 offense." *Weems v. United States*, 217 U.S. 349, 367 [] (1910).

                                        26

1   Graham v. Florida, 560 U.S. 48, 58-59 (2010).

2                       Analysis

3          Petitioner explains his Eighth Amendment right to be free of cruel and unusual

4   punishment was violated following his conviction for the injury sustained by his wife Jeri

5   McCarty because following a 2006 spinal surgery at UC Davis Medical Center - wherein he

6   alleges an electronic device was implanted in his neck that has since allowed others to control his

7   body at all times - he had no control over his actions, and therefore, a conviction and sentence of

8   thirty-nine years-to-life amounts to cruel and unusual punishment.

9          Initially, the undersigned notes that to the degree petitioner can be understood to seek the

10  assistance of this court in obtaining x-rays or other documentation from UC Davis Medical

11  Center pertaining to the surgical procedure petitioner received, petitioner is advised no such

12  assistance will be forthcoming.  The United States Supreme Court has held "that review under

13  § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

14  the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted

15  in' a decision that was contrary to, or 'involved' an unreasonable application of, established law.

16  This backward-looking language requires an examination of the state-court decision at the time it

17  was made.  It follows that *the record under review is limited to the record in existence at that*

18  *same time i.e., the record before the state court*."  Cullen v. Pinholster, 563 U.S. 170, 181-82

19  (2011) (emphasis added).  Notably too, an evidentiary hearing is not warranted when "the record

20  refutes the applicant's factual allegations or otherwise precludes habeas relief."  Schriro v.

21  Landrigan, 550 U.S. at 474.

22         Next, there is simply no evidence to support petitioner's claim absent his own assertions.

23  The documents provided with petitioner's traverse or reply to respondent's answer indicate he

24  underwent surgery to treat or correct cervical spinal stenosis.  (ECF No. 16 at 7-10.)  More

25  particularly, a "C3-C6 laminectomy, C3-C6 posterior fusion with lateral mass screws and

26  autologous morcellized bone grafts" procedure was performed.  (ECF No. 16 at 8.)  Certainly no

27  reference is made to any "computer" or similar electronic device being implanted, rather, "Lateral

28  mass screws" and "lordic rods" were placed during the procedure.  (ECF No. 16 at 8.)  Despite

1    petitioner's request, the court cannot afford habeas petitioner the "benefit of doubt."

2            Habeas relief is not warranted where the claim is based on mere speculation.  Petitioner's

3    bare assertion that discovery, even were it permitted, would uncover evidence that doctors

4    implanted an electronic device in his neck that controlled his actions some seven years later is

5    insufficient to warrant federal habeas relief.  Wood v. Bartholomew, 516 U.S. 1, 6, 8 (1995)

6    (granting federal habeas relief on the basis of mere speculation with little or no support upsets the

7    delicate balance between the federal courts and the states); Blackledge v. Allison, 431 U.S. 63, 75

8    n.7 (1977) ("the petition is expected to state facts that point to a 'real possibility of constitutional

9    error'" (citation omitted)); Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (explaining

10   that "to state a Brady claim, [a petitioner] is required to do more than 'merely speculate' about"

11   the withheld evidence); Bragg v. Galaza, 242 F.3d at 1088 (mere speculation that evidence might

12   be helpful insufficient to establish ineffective assistance); Jones v. Gomez, 66 F.3d at 204-05

13   (conclusory allegations not supported by statement of specific facts do not warrant habeas relief);

14   James v. Borg, 24 F.3d at 26 (same); see also Jensen v. Hernandez, 864 F.Supp.2d 869, 914 (E.D.

15   Cal. 2012) ("[m]ere speculation regarding [factors required for a claim of prosecutorial

16   misconduct] insufficient to meet petitioner's burden"]); Osumi v. Giurbino, 445 F.Supp.2d 1152,

17   1163 (C.D. Cal. 2006) ("petitioner's mere speculation regarding evidence possibly contained in

18   the arresting officers' personnel files is manifestly insufficient to demonstrate petitioner was in

19   any manner prejudiced by trial counsel not filing a Pitchess motion").

20           A claim arising under the Eighth Amendment has traditionally applied to criminal

21   punishment, and its parameters would not be extended to encompass a situation wherein

22   petitioner contends, without evidence, that an electronic device that was implanted in his neck

23   seven years prior to the date of the incident giving rise to his conviction, and that an unknown

24   third party's act somehow manipulated and forced him to punch his wife on that occasion,

25   fracturing her jaw.  It is, in short, improbable.  See, e.g., Smith v. Winters, 337 F.3d 935, 937 (7th

26   Cir. 2003) ("Ordinarily an affidavit alleging matters that are both within the personal knowledge

27   of the affiant and germane to a vital issue creates a genuine issue of material fact, but not where

28   the allegations are so far improbable as to verge on the fantastic and could if true be corroborated

                                                    28

1  but no effort at corroboration is made").  Moreover, the undersigned is not aware of any clearly

2  established Supreme Court precedent allowing for a claim such as the one presented by petitioner

3  here.  That too would preclude habeas relief.  See, e.g., Holley v. Yarborough, 568 F.3d 1091,

4  1101 (9th Cir. 2009) (no Supreme Court precedent establishing a principle for evaluating trial

5  court's discretionary decision to admit evidence as a violation of due process); Bashor v. Risley,

6  730 F.2d 1228, 1240 (9th Cir. 1984) (no clearly established Supreme Court precedent applying

7  Beck v. Alabama lesser included offense rule to non-capital cases).  Where there is no clearly

8  established Supreme Court precedent, it is not possible to conclude that the state court's reasoning

9  was contrary to, or an unreasonable application of, it.  See Carey v. Musladin, 549 U.S. at 77

10  ("[g]iven the lack of holdings from this Court . . . it cannot be said that the state court

11  'unreasonabl[y] appli[ed] clearly established Federal law'").

12       Simply put, petitioner's claim that his conviction and sentence are in violation of the

13  Eighth Amendment is improbable and fantastical.  There is no evidence to support petitioner's

14  assertion that an electronic device was implanted in his neck in 2006 during a surgery to correct a

15  spinal condition, and that some seven years later, that device was somehow triggered by a third

16  party or parties and forced petitioner to punch his wife, thereby fracturing her jaw.

17       The state courts' rejection of petitioner's Eighth Amendment claim was not contrary to, or

18  an objectively unreasonable application of, clearly established federal law and did not constitute

19  an unreasonable determination of the facts in light of the evidence presented.  Accordingly, the

20  undersigned recommends habeas relief be denied on this claim.

21  **VI.  <u>Conclusion</u>**

22       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

23  habeas corpus be denied.

24       These findings and recommendations are submitted to the United States District Judge

25  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26  after being served with these findings and recommendations, any party may file written

27  objections with the court and serve a copy on all parties.  Such a document should be captioned

28  "Objections to Magistrate Judge's Findings and Recommendations."    If petitioner files

29

1   objections, he shall also address whether a certificate of appealability should issue and, if so, why

2   and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

3   the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

4   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

5   service of the objections.  The parties are advised that failure to file objections within the

6   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

7   F.2d 1153 (9th Cir. 1991).

8   Dated:  August 16, 2021

9

10

Mcca0224.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28